BELLE F. KOR, APPELLEE, v. AMERICAN EAGLE FIRE IN-
SURANCE COMPANY, APPELLANT.

FILED MAY 15, 1920.    No. 20985.

1. Insurance: PAROL CONTRACT. It is essential to a valid parol con-
tract of insurance that there should be a definite understanding,
and the minds of the parties must meet, as to the company in
which the insurance is to be placed, the property to be covered,
the amount of the insurance, and the duration of the risk, and
the premium to be paid must be agreed upon and paid, or exist
as a legal charge against the party insured, where the contract is
not conditioned upon payment in advance.

2. ———: ———: PREMIUM. Previous dealings between the parties
may be looked to in determining whether an insurance contract
was intended to be conditional upon the prepayment of the pre-
mium, or whether the extension of credit was contemplated.

3. ———: ———: DURATION OF RISK. Although no express agree-
ment was reached as to the duration of the risk, a parol contract of
insurance will not be invalidated for uncertainty in that particular,
if the intention of the parties as to the duration of the risk can be
gathered from the facts and circumstances in evidence.

4. ———: ———: ———: EVIDENCE. In an action to enforce an
alleged parol contract to insure, proof that the insurance com-
pany previously had issued to the plaintiff a five-year policy cover-
ing the same property, which was afterwards canceled, was not
evidence of a definite understanding between the parties that the
duration of the risk should be the same under the parol contract,
where nothing was said between the parties with reference to
the prior policy, or from which a mutual intention to adopt its
terms could be inferred.

5. ———: REMOVAL OF GOODS. It is not indispensable to recovery for
the loss of goods insured, after their removal to a different place,
that consent should have been first obtained for the removal; sub-
sequent ratification and consent by the insurer, with knowledge
of the facts, is equivalent to precedent consent.

6. ———: ———: FORFEITURE: WAIVER. In an action to recover for
the loss of goods insured after their removal to a different loca-
tion, the defense of forfeiture on the ground of such removal will
be held to have been waived, where, prior to the loss, the insured
gave notice of such removal and requested the authorized agent

of the insurer to transfer the insurance to cover the goods in their new location, and the agent agreed to make such transfer; although no formal consent or transfer was, in fact, executed.

7. ———: ———: AUTHORIZATION BY AGENT. An agent authorized to issue policies of insurance in a certain county, who enters into a valid contract to insure goods therein which are afterwards removed to another county, may bind his principal to transfer the insurance to cover the property in its new location, where, upon being notified by the insured of such removal, the agent promises on behalf of the insurer to make the transfer, and the insured is not informed by him, or otherwise, of any restriction upon the agent's authority in that regard.

8. Trial: INSTRUCTION. An instruction which ignores the principal issues in the case, and authorizes the jury to base their verdict upon their finding as to a single controverted fact not decisive of those issues, is erroneous.

APPEAL from the district court for Lancaster county: WILLARD E. STEWART, JUDGE. *Reversed.*

*Charles Battelle, H. F. Guile* and *C. L. Clark,* for appellant.

*Berge & McCarty, contra.*

DORSEY, C.

The plaintiff recovered in this action upon an alleged parol contract to insure her household goods and piano, and the defendant appeals. She claims the contract in question was entered into in April, 1916, by the Fidelity Underwriters of New York, through J. M. Guile and Henry F. Guile, its agents in Lincoln, Nebraska. In August, 1916, the defendant took over the business and assumed the liabilities of the Fidelity Underwriters, and the Guiles thereafter became the defendant's agents.

The plaintiff's petition sets forth that in the spring of 1916, in consideration of a premium of about $21, the exact amount of which she does not remember, but which she promised to pay, the defendant insured the piano in the sum of $400, and the household goods in the sum of $400, against loss by fire for the period of five years,

and agreed to write a policy on its usual form in pursuance of said agreement; and thereafter she moved from Lancaster county to Platte county, Nebraska, and took the insured property with her; that, on November 30, 1917, through her husband and agent, John A. Kor, she informed the defendant of her change of residence and of the removal of the property, and requested that the insurance be made to cover it in Platte county; that at that time she paid, and the defendant accepted, $10 upon the premium; and that the property was wholly destroyed by fire on December 11, 1917.

The defendant, in its answer, denied that any contract to insure the property, or to issue a policy thereon, had been entered into as alleged, or that any request had been made of it to make the insurance cover the property after its removal to Platte county; admitted receiving the $10 payment, but alleged that it was paid upon a policy of insurance which it was carrying upon a dwelling-house belonging to the plaintiff in Lincoln.

The proof offered by the plaintiff to substantiate the contract consisted of the testimony of her husband that in April, 1916, he went to the office of the Guile agency and told Henry F. Guile that he wanted to insure the property in the sum of $400 on household goods and $400 on the piano; that Guile made out a list of the household goods, and that he told Guile to write the insurance; that the premium, the exact amount of which the witness could not recollect, was mentioned, but nothing was said obout paying it. He stated that Guile asked him if he could write the policy, and that the witness told him he could. The witness further testified that no other communication took place between the plaintiff and the Guile agency until November 30, 1917, when the witness came to Lincoln, and, as he stated, met Henry F. Guile, and remarked to him that he had not paid the insurance premium and that he would pay it; that Guile then asked him if he had the policy, and the witness replied that it had never been sent to him;

whereupon Guile searched for the policy, and, not finding it, looked in a book, and said it was $400 on the piano and $400 on the household goods, and that the premium was $21 and some cents; that the witness told him he would pay $10 then and the remainder when he returned to Lincoln. He also testified that he instructed Guile to make the policy cover the property in Platte county, and that Guile said he would transfer the insurance right away.

It appears from the record that, while the plaintiff was residing in Lincoln in 1912, she took out a policy of $600 on her piano and household goods in the Fidelity Underwriters of New York through the Guile agency. That policy expired in September, 1915, and a new policy for $800 was issued on the same property, which, however, was lost and never delivered to the plaintiff, the company obtaining from her a "lost policy voucher," releasing it from liability thereunder. The plaintiff moved to Platte county in April, 1917.

Henry F. Guile denied that his agency had issued, or entered into any agreement to issue, a policy on the property in question after the cancelation of the policy issued in September, 1915. He admitted that he met and talked with Kor on November 30, 1917, and that he collected $10 from him at that time. He stated, however, that this was paid upon a premium due upon insurance covering the plaintiff's house in Lincoln, which his agency was carrying. Guile further testified that, after the plaintiff removed to Platte county, her husband at one time requested him to insure the property there, but that he stated that he was not authorized to do so. He denied that anything was said on that subject during the interview November 30, 1917, or that Kor ever talked with him about transferring the insurance to cover the property in Platte county.

The defendant contends that the evidence is insufficient to establish the alleged oral contract of insurance in April, 1916. An oral agreement to insure must be

definite as to all of the material terms of the contract. *Glatfelter v. Security Ins. Co.,* 102 Neb. 464; *Bridges v. St. Paul Fire & Marine Ins. Co.,* 102 Neb. 316. In order to make a valid contract of insurance, a definite understanding must be reached, and the minds of the parties must meet, as to the company in which the insurance is to be placed, the property to be covered, the amount of the insurance and the duration of the risk, and the premium to be paid must be agreed upon and paid, or exist as a legal charge against the party insured, where the contract of insurance is not conditioned upon payment in advance. *Cleveland Oil & Paint Mfg. Co. v. Norwich Union Fire Ins. Society,* 34 Or. 228; *Todd v. German-American Ins. Co.,* 2 Ga. App. 789. The testimony offered on behalf of the plaintiff establishes with sufficient certainty that the insurance was to be placed in the Fidelity Underwriters of New York, the predecessor of the defendant, whose liabilities the defendant assumed. There is no uncertainty in the testimony on behalf of plaintiff as to the property to be covered or the amount of the insurance; but it was lacking in definiteness with reference to the premium and the duration of the risk.

With regard to the premium, the plaintiff's husband testified that in his conversation with Henry F. Guile the amount of the premium—about $21—was mentioned, but nothing was said about paying it. In September, 1915, however, the Guile agency wrote a policy for $800 in the Fidelity Underwriters on the identical property, which was afterwards canceled. The premium upon this policy was $20 for the term of five years. It appeared, furthermore, that in August, 1915, a policy in the same company had been issued upon the plaintiff's dwelling-house in Lincoln, the premium upon which was still unpaid in November, 1917, when, according to the testimony of Henry F. Guile, the plaintiff paid him $10 to apply upon it. It is the rule that previous dealings between the parties may be looked to in determining whether a cash payment or credit was intended, and

whether prepayment of the premium was waived by the insurer. *Western Assurance Co. v. McAlpin*, 23 Ind. App. 220, 77 Am. St. Rep. 423; *Commercial Fire Ins. Co. v. Morris & Co.*, 105 Ala. 498; *Home Ins. Co. v. Adler*, 71 Ala. 516; *Boice v. Thames and Mersey Marine Ins. Co.*, 38 Hun (N. Y.) 246. The course of dealing between the parties with reference to insurance premiums affords some basis for the inference that definite terms of payment of the premium upon the alleged contract of insurance were not exacted by the insurer's agent, and that there was a tacit or implied understanding that credit should be extended.

The testimony upon which the plaintiff relies to establish the terms of the alleged contract is silent as to the duration of the risk; it is not stated that the agent Guile agreed to write it for five years or for any other definite term. In spite of the absence of specific testimony upon that point, the alleged contract of insurance might be enforced, if the intention of the parties as to the duration of the risk could be gathered from the circumstances in evidence. *Concordia Fire Ins. Co. v. Heffron*, 84 Ill. App. 610; *Home Ins. Co. v. Adler, supra*. The only circumstance that could throw light upon the matter is the fact that the policy issued in September, 1915, and later canceled, was for five years, and that the premium thereon was approximately the same as the amount of premium which the plaintiff's husband testified was mentioned in the conversation in April, 1916. There was no testimony, however, that reference was made to the previous policy during that conversation, or that anything was said to the effect that the contract which they were then discussing should be upon the same terms as the canceled policy.

The conversation upon which plaintiff relies to establish the alleged parol contract occurred in April, 1916, while the property was destroyed by fire in December, 1917. According to the plaintiff's own evidence, she made no demand for the policy which she claimed the

insurance agent agreed to issue, nor did she make any inquiry in regard to it, until November 30, 1917. The proof adduced was, in our opinion, too vague to justify a finding, even by inference, that a complete contract was entered into to insure the property for any certain time. *Cleveland Oil & Paint Mfg. Co. v. Norwich Union Fire Ins. Society, supra; Strohn v. Hartford Fire Ins. Co.,* 37 Wis. 625, 19 Am. Rep. 777.

Another element of the plaintiff's case was the effect of the removal of the insured property to Platte county upon her rights under the alleged contract of insurance. The plaintiff, in her petition, alleged that the insurance company agreed to issue its usual form of policy in con-formity with the parol contract. The policy probably would have contained an express provision relative to the location of the property and invalidating the insur-ance in case of removal without the insurer's consent. But no such stipulation of the company's ordinary form of policy was pleaded or offered in evidence. The plain-tiff, however, by pleading that in November, 1917, she gave notice of the removal and requested that the insur-ance be made to cover the property in Platte county, conceded that it was necessary to her right to recover to show, either that the defendant consented that the insurance should cover the property in its new location, or that, by its conduct after receiving notice of its re-moval, the defendant waived its right to claim a for-feiture of the insurance on that ground.

That such right of forfeiture may be waived by the duly authorized agent of the insurer is well established. *Burlington Ins. Co. v. Campbell & Talbot,* 42 Neb. 208. It is not indispensable to recovery for the loss of goods insured after their removal to a different place that con-sent should have been first obtained for the removal; subsequent ratification and consent by the insurer, with knowledge of the facts, is equivalent to precedent con-sent. *Williamsburg City Fire Ins. Co. v. Cary,* 83 Ill. 453.

If there was a valid contract to insure, and the plaintiff thereafter notified the defendant's authorized agent of the removal of the property, requesting that the insurance be made to cover it in its new location, and the defendant's agent promised to transfer the insurance, those facts would be sufficient to constitute a waiver. The testimony for the plaintiff as to such facts is controverted; but, in determining whether the waiver was established by sufficient evidence, this court is required to adopt the plaintiff's version of the facts. After receiving notice of the removal, the insurer could not lead the insured to believe that it was willing to continue the risk, remain quiescent until after the property had been destroyed by fire, and then claim that the insurance was forfeited. After notice of removal under such circumstances, it would be incumbent upon the insurer affirmatively to rescind the contract and cancel the insurance. *Williamsburg City Fire Ins. Co. v. Cary, supra; Cooper v. German-American Ins. Co.,* 96 Minn. 81.

The only question with regard to the alleged waiver is whether it was within the scope of Guile's authority as agent to bind the defendant by consenting to the transfer, and whether notice to him was notice to the defendant. The principal is bound by the acts of his agent within the apparent scope of the agent's authority. Guile was agent with authority to issue policies of insurance. He testified that, in case the policy had been issued by him in Lincoln and the insured moved to another city or town, he was authorized to transfer the insurance, but not in case the insured removed to a farm. It was not shown that this restriction upon his authority ever had been brought to the knowledge of the plaintiff. Guile testified that, on one occasion when the plaintiff's husband spoke to him about insurance, he told him he was not authorized to write insurance in Platte county, but not that he could not transfer insurance already written. So far as appeared to the plaintiff or her agent, Guile was authorized to transfer the insurance.

Kor v. American Eagle Fire Ins. Co.

The defendant is in no position to maintain that Guile was without apparent authority to consent to the transfer. Whether he did in fact consent was a question for the jury, and there was, we think, sufficient evidence to warrant its submission, provided there had been sufficient proof to establish the alleged parol contract of insurance in April, 1916.

In the instructions given by the trial court appears the following: "If the evidence satisfies you that the agent of defendant, or of said Fidelity Underwriters, received said $10 payment upon the understanding that it was in part payment for insurance upon said goods and piano.in Platte county; the plaintiff will be entitled to recover from the defendant. On the other hand, if you believe from the evidence that said $10 payment was for credit on the real estate policy, then the plaintiff would not be entitled to recover in this action."

The principal issues in the case were: First, whether the insurance contract was made in April, 1916, as alleged; and, second, whether, in the event the evidence was sufficient to establish the contract, the defendant agreed to transfer the insurance to cover the property in Platte county. The alleged payment in November, 1917, had a bearing upon these issues, but was not conclusive of them. In directing the jury to base their verdict upon their finding upon the question of the premium payment alone, the instruction was erroneous, and upon a retrial should not be given.

Because of the deficiency of proof to establish the alleged contract, as well as for error in the instruction referred to, we recommend that the judgment be reversed and the cause remanded for further proceedings.

Per Curiam. For the reasons stated in the foregoing opinion, the judgment of the district court is reversed and the cause remanded for further proceedings, and this opinion is adopted by and made the opinion of the court.

Reversed.