*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* ELI HAVEL, Minor.

PEOPLE OF THE STATE OF MICHIGAN,

        Petitioner-Appellee,

v

ELI HAVEL,

        Respondent-Appellant.

UNPUBLISHED
February 19, 2026
10:41 AM

No. 376549
Marquette Circuit Court
Family Division
LC No. 2024-010908-DL

Before: SWARTZLE, P.J., and MALDONADO and ACKERMAN, JJ.

PER CURIAM.

Respondent was 16 years old when he crashed his vehicle while allegedly intoxicated; a passenger in the vehicle died as a result of the accident. Respondent was charged in the family division of the trial court as a juvenile with involuntary manslaughter and operating a vehicle while intoxicated. The family court, upon the prosecutor's motion, waived its jurisdiction and transferred respondent's case to the criminal division of the trial court. We affirm.

## I. BACKGROUND

At the hearing on the prosecutor's motion to waive jurisdiction and transfer respondent's case, several officers and people connected to the victim and respondent testified. The prosecutor presented evidence pertaining to respondent's post-accident conduct including an officer's testimony that he discovered an unintoxicated respondent leaving a gas station in a vehicle containing unopened cans of alcohol. Further, the victim's roommate testified that respondent asked her to place "the blame" on the victim by claiming that the victim provided the alcohol the night of the accident, which was a lie according to the roommate.

As for the impact of the accident, several officers who responded to the scene described the effects the accident had on them personally, as well as on law enforcement resources and the

-1-

community.  The victim's sister discussed the significant emotional impact of the victim's death on her and her mother, including the need for therapy and medications.  In addition, the victim's father testified about the impact that the victim's death had on him but stated that the victim would have wanted to help respondent and would not have wanted to be "responsible for ruining his friend's life."

For programming, respondent's probation officer testified that respondent was participating in random drug tests and therapy and recommended that such requirements continue if respondent remained in juvenile court.  According to the probation officer, the programming that respondent could receive would not change once he turned 18 years old, though he noted that respondent would only have access to the services that the community would provide.  While he did not have much experience with these cases, the probation officer testified that he believed his office could "hold on" to a juvenile until they turned 21 years old.

After hearing all of the evidence, the family court waived its jurisdiction over respondent's case and transferred the matter to the trial court's general criminal division.  The family court found that the seriousness of the offense and the protection of the community weighed strongly in favor of waiver in part because respondent disregarded the law prohibiting minors to be in possession of alcohol shortly after the accident.  Although the family court referenced this incident when considering respondent's prior record, the family court ultimately found that the factors for respondent's prior record and programming history weighed against waiver based on respondent's cooperation in therapy, character letters, and a lack of prior delinquent behavior.

The family court found that respondent's culpability was found to weigh strongly in favor of waiver because respondent alone was responsible for driving while intoxicated.  For punishment, programming, and dispositional options available for respondent, the family court found this factor weighed in favor of waiver because, after reviewing MCL 712A.2, it did not appear that the family court could maintain jurisdiction over respondent until he was twenty or twenty-one, and so, available programming or punishment would only last for one year.

In addition to the six factors above, the family court also considered the following three factors provided in the amended versions of MCR 3.950(D)(2)(d) and MCL 712A.4(4): respondent's developmental maturity, emotional health, and mental health; respondent's membership of a federally recognized Indian tribe; and the impact on any victim.  The family court found the health factor neutral and the tribal membership factor inapplicable.  For the impact on victims factor, the family court weighed the factor in favor of waiver, "believe[ing] that the victim can include the police officers that responded, the EMT personnel that responded, the friends and relatives of the decedent, and society as a whole."

## II. ANALYSIS

On appeal, respondent argues that the family court erred by waiving its jurisdiction over respondent and transferring his case to the criminal division. We review for an abuse of discretion the trial court's decision to waive jurisdiction in a juvenile matter. *People v Cheeks*, 216 Mich App 470, 474; 549 NW2d 584 (1996).  "An abuse of discretion occurs when the trial court's decision falls outside the range of principled outcomes." *People v Seewald*, 499 Mich 111, 116; 879 NW2d 237 (2016) (cleaned up).  For interpretation of statutes and court rules, we review de

novo. *In re Diehl*, 329 Mich App 671, 701; 944 NW2d 180 (2019). The trial court's factual findings are reviewed for clear error, MCR 2.613(C), specifically reviewing for whether "this Court is definitely and firmly convinced that the trial court made a mistake," *People v Swenor*, 336 Mich App 550, 564; 971 NW2d 33 (2021). For any issues not preserved by respondent, those issues are examined under plain-error review: (1) an error occurred; (2) that was clear or obvious; and (3) that affected respondent's substantial rights such that the error affected the outcome. *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999).

Respondent first challenges the jurisdictional waiver factors used by the family court. Three months after the accident occurred, the statute (MCL 712A.4(4)) and the court rule (MCR 3.950(D)(2)(d)) containing the waiver factors for juvenile jurisdiction were amended. See 2023 PA 291 and Administrative Order No. 2023-36 (2024). Generally, an amended statute applies prospectively unless our Legislature expressly or impliedly intended for it to apply retroactively. *People v Russo*, 439 Mich 584, 594; 487 NW2d 698 (1992). An amended court rule, however, is effective at the time of the hearing unless the old rule would "not be feasible or would work injustice." *People v Tardy*, 348 Mich App 500, 510-511; 19 NW2d 164 (2023).

Respondent concedes that MCL 712A.4(4) is silent as to retroactivity, but argues that the amended court rule, and therefore the amended factors, should have been applied when the family court made its decision on jurisdiction. "When a court rule conflicts with a statute, the court rule controls when the matter pertains to practice and procedure, but the statute prevails if the matter concerns substantive law." *Stenzel v Best Buy Co, Inc*, 320 Mich App 262, 279; 906 NW2d 801 (2017) (cleaned up). A matter is purely procedural if it "pertains only to the administration of the courts," *Gladych v New Family Homes, Inc*, 468 Mich 594, 600; 664 NW2d 705 (2003); a matter is substantive if it concerns a "principle of public policy" and based in "something other than court administration," *McDougall v Schanz*, 461 Mich 15, 30-31; 597 NW2d 148 (1999).

The amendments to the statute and court rule involve substantive policy choices, not merely court administration. They focus on a youth's developmental maturity, especially with regard to the need for treatment and rehabilitation and the options available in the juvenile division or the criminal division of the circuit court. While the waiver-of-jurisdiction factors do contain some procedural aspects, the factors are primarily substantive. See *McDougall*, 461 Mich at 30-31. Because the waiver factors are primarily substantive in nature, the statute controls. *Stenzel*, 320 Mich App at 279. Because respondent's conduct occurred before the date on which the statutory amendment became effective, we find that the pre-amendment statutory factors control in this case. See *Russo*, 439 Mich at 594.

The family court did not abuse its discretion by waiving jurisdiction. The pre-amendment version of MCL 712A.4(4) provided the following:

 (4) Upon a showing of probable cause under subsection (3), the court shall conduct a hearing to determine if the best interests of the juvenile and the public would be served by granting a waiver of jurisdiction to the court of general criminal jurisdiction. In making its determination, the court shall consider all of the following criteria, giving greater weight to the seriousness of the alleged offense and the juvenile's prior record of delinquency than to the other criteria:

(a) The seriousness of the alleged offense in terms of community protection, including, but not limited to, the existence of any aggravating factors recognized by the sentencing guidelines, the use of a firearm or other dangerous weapon, and the impact on any victim.

(b) The culpability of the juvenile in committing the alleged offense, including, but not limited to, the level of the juvenile's participation in planning and carrying out the offense and the existence of any aggravating or mitigating factors recognized by the sentencing guidelines.

(c) The juvenile's prior record of delinquency including, but not limited to, any record of detention, any police record, any school record, or any other evidence indicating prior delinquent behavior.

(d) The juvenile's programming history, including, but not limited to, the juvenile's past willingness to participate meaningfully in available programming.

(e) The adequacy of the punishment or programming available in the juvenile justice system.

(f) The dispositional options available for the juvenile.

The amendment added two factors: (g) the juvenile's developmental maturity, emotional health, and mental health, and (h) if the juvenile is a member of a federally recognized Indian tribe, culturally honoring traditional values of the tribe. The amendment also moved consideration of the impact of any victim from subsection (a) to its own separate subsection, (i).

The family court determined that there was a preponderance of the evidence that waiver was in the best interest of respondent and the public, focusing on respondent's conduct before, during, and after the accident. This decision was not an abuse of discretion. The respondent's two charges and the allegations relating to them demonstrated sufficient seriousness and culpability to weigh in favor of waiver. And given the short time frame that the family court would have jurisdiction over respondent because of his age, the trial court did not err in finding that the available punishment, programming, or dispositional options in the family court were inadequate. The trial court did not abuse its discretion when weighing the factors to determine that waiver would be in the best interests of respondent and the public.

Although the family court did consider the revised factors under the amended rule and statute, this error was harmless because the trial court's ultimate conclusion did not depend on the amendments. The family court found that the new factors were neutral or did not apply. As for impact of the victim, analyzing it as a separate factor did not make a substantial difference in the family court's decision. The family court found that the seriousness of the offense, which was the factor decided in conjunction with impact of the victim pre-amendment, weighed in favor of waiver. So, impact of the victim and seriousness of the offense would have been weighed in favor of waiver under both the pre-amendment and post-amendment statute and rule.

The only error that this Court finds with the family court's weighing of factors is its inclusion of certain persons as "victims." Neither the definition section applicable to the statute, see MCL 712A.1, nor the one relevant to the court rule, see MCR 3.903, defines who constitutes a victim under the statutory waiver factors. The definition section for the court rule, MCR 3.903, does reference the Crime Victim's Rights Act, MCL 780.751 *et seq.*, which defines victim as "[a]n individual who suffers direct or threatened physical, financial, or emotional harm as a result of the commission of a crime," MCL 780.752(1)(m)(i), including parents and siblings if the victim is deceased, MCL 780.752(1)(m)(ii)(C) and (E). Additionally, our Supreme Court has previously interpreted victim as "any person who is harmed by the defendant's criminal actions." *People v Laidler*, 491 Mich 339, 348; 817 NW2d 517 2012 (discussing OV 3).

Here, one victim was the passenger who passed away as a result of the crash. Further, the family court properly considered as "victims" the deceased's sister and father who testified about the emotional impact of the accident. See MCL 780.752(1)(m)(ii)(C) and (E). For the troopers and EMT personnel who responded to the accident, they may be victims if they were harmed by respondent's criminal actions. See *People v Fawaz*, 299 Mich App 55, 61; 829 NW2d 259 (2012) (finding that the firefighters who responded to an arson call were victims because they suffered smoke-inhalation injuries as a result of the defendant's criminal conduct); see 780.752(1)(m)(i) ("emotional harm"). The responding troopers testified that the accident had an emotional impact on them, so it was not error for the family court to have considered them as victims.

The family court did err, however, by considering the community and "society as a whole" as victims of respondent's actions. None of the definitions of victim are broad enough to encompass an entire community or society. One trooper's testimony that cases like respondent's significantly impacted the community was not sufficient for the trial court to consider all of society to be a victim of a single-car rollover accident. Although respondent recognized during the hearing that the impact on the victim was "immeasurable" and the loss was "immense," the family court's determination relating to victims should have been based on evidence related to specific individuals and the harm they experienced, not generalities. It was error for the family court to determine that society as a whole—whether that be every person in society or just the idea of society—was harmed to such an extent to have been considered a victim.

Despite this error, the family court did not abuse its discretion in its ultimate decision. Disregarding the impact on society, the impact on the other victims, including the deceased's family and responding officers, was sufficient to support the family court weighing this factor in favor of waiver. The outcome for respondent would not have been different but for this error. Therefore, the trial court did not abuse its discretion when weighing the factors to determine that waiver would be in the best interests of respondent and the public.

## III. CONCLUSION

Ultimately, the family court did not abuse its discretion when it waived respondent into the adult criminal justice system. Although the situation was tragic for all of those involved, especially for the victim but also for respondent, the family court's weighing of factors and its ultimate

conclusion was not outside the range of principled outcomes based on the evidence presented. See *Seewald*, 499 Mich at 116.

Affirmed.

/s/ Brock A. Swartzle
/s/ Allie Greenleaf Maldonado
/s/ Matthew S. Ackerman